IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VERONICA NEWBECK and JOHN J. FORD, III,

    Plaintiffs,

    v.

WASHINGTON MUTUAL BANK and PLAZA HOME MORTGAGE, INC.,

    Defendants.
_____/

No. C 09-1599 CW

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (Docket Nos. 13 and 20)

Plaintiffs Veronica Newbeck and John J. Ford, III charge Defendants Washington Mutual Bank and Plaza Home Mortgage, Inc. with failing to disclose information in violation of federal and state law. Plaza Home and JP Morgan Chase, N.A., as receiver of Washington Mutual's assets and liabilities, move separately to dismiss Plaintiffs' complaint. (Docket Nos. 13 and 20.) Plaintiffs oppose the motions. The motions were decided on the papers. Having considered all of the papers submitted by the parties, the Court GRANTS Plaza Home's and Chase's[1] motions.

BACKGROUND

In December, 2006, Plaintiff Veronica Newbeck obtained an adjustable-rate loan for $521,500 from Defendant Plaza Home, secured by property located at 230 Cordova Street in San Francisco,

---

[1] Although Chase has succeeded to Washington Mutual's assets and liabilities, because Plaintiffs name Washington Mutual as a Defendant, the Court refers to the conduct as that of Washington Mutual, not Chase.

California.[2] Plaintiffs allege that, in the execution of the loan, Plaza Home and Defendant Washington Mutual deceived Ms. Newbeck by failing to disclose "information regarding the terms of the ARM Note and Deed of Trust in a clear and conspicuous manner . . . ." Compl. ¶ 41. In particular, Plaintiffs maintain that Defendants did not disclose the potential for negative amortization and that the initial "teaser" rate of 1.5 percent would increase to 8.625 percent after thirty days. Compl. ¶¶ 47, 56. Plaintiffs claim that Ms. Newbeck would not have accepted the terms of the loan but for Defendants' unlawful conduct.

In November, 2007, Quality Loan Service Corporation, apparently on behalf of Washington Mutual Bank, recorded a notice of default on Plaintiffs' property. Selden Decl., Ex. I.[3] Plaintiffs allege that on February 25, 2008, Washington Mutual recorded a notice of trustee sale on their property. Thereafter, Ms. Newbeck filed for bankruptcy, thereby subjecting the sale to an automatic stay. This stay was lifted on July 2, 2008 and, at some unspecified time thereafter, Washington Mutual sold Plaintiffs' property at a non-judicial foreclosure sale.

Plaintiffs allege that Defendants violated TILA and California

---

[2] As discussed in further detail below, Mr. Ford's role in the loan transaction is not clear. Mr. Ford appears to be Ms. Newbeck's brother and the complaint pleads that they inherited the property as tenants-in-common. This relationship, however, may not be sufficient to accord him standing to assert claims of non-disclosure arising from the loan transaction.
For clarity, the Court refers to Mr. Ford and Ms. Newbeck as Plaintiffs in this action, without deciding whether Mr. Ford has standing.

[3] The Court grants Plaza Home's Request for Judicial Notice. The documents of which Plaza Home seek judicial notice contain facts that are not subject to reasonable dispute. Fed. R. Evid. 201.

2

Business and Professions Code § 17200, and committed fraudulent omissions. They also ask the Court to set aside Washington Mutual's foreclosure sale and to declare the ownership rights of the Cordova Street property.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

## DISCUSSION

Defendants move to dismiss on the basis that Plaintiffs fail to plead facts supporting their claims. In the alternative, they move under Federal Rule of Civil Procedure 12(e) for a more definite statement. Separately, Plaza Home moves to dismiss Mr. Ford's claims, arguing that he lacks standing to sue.

Plaintiffs' opposition does not directly respond to

3

Defendants' arguments, but instead asserts that Defendants lack "standing" to appear in the litigation. See Pls.' Opp'n to Plaza Home's Mot. to Dismiss at 2; Pls.' Opp'n to Chase's Mot. to Dismiss at 1. Plaintiffs' main argument is that, because neither Defendant held the original mortgage note, the foreclosure sale was improper.

After Defendants filed their replies in support of their respective motions, Plaintiffs filed a "Response to JPMorgan/Chase Bank Reply to Motion to Dismiss." (Docket No. 31.) Although this filing violates Civil Local Rule 7-3(d), which provides that, generally, a party may not submit additional memoranda without the Court's leave after a reply is filed, the Court nevertheless considers it because Plaintiffs are proceeding without counsel.

I.  TILA Claims

Plaintiffs assert that Defendants violated TILA by failing to disclose information regarding the loan's interest rate and the potential for negative amortization. Defendants argue that Plaintiffs' claims are time-barred.

Ms. Newbeck obtained her loan in December, 2006. As Defendants correctly note, TILA has a one-year statute of limitations for actions seeking damages. 15 U.S.C. § 1640(e). Further, Ms. Newbeck's right to rescind the loan, to the extent that she had one, expired upon the sale of the property. Id. § 1635(f). Thus, based on their complaint, Plaintiffs have no right to damages or rescission under TILA.

Accordingly, Plaintiffs' TILA claims are dismissed with leave to amend to plead facts showing that they are entitled to seek damages or rescission under TILA, despite the running of the limitations period.

## II. Claims under California Business and Professions Code § 17200

California's Unfair Competition Law (UCL) prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state or local law may serve as the basis for a UCL claim. Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994). In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." Olszewski v. Scripps Health, 30 Cal. 4th 798, 827 (2003).

Plaintiffs base their UCL claims on Defendants' alleged violations of TILA and California Financial Code § 22302 and on Defendants' alleged "unfair and fraudulent" business practices. Defendants maintain that Plaintiffs' UCL claims are preempted by TILA and that, even if they were not, Plaintiffs fail to plead facts showing unfair or fraudulent conduct.

TILA's preemption provision provides:

> Except as provided in subsection (e) of this section, this part and parts B and C of this subchapter do not annul, alter, or affect the laws of any State <u>relating to the disclosure of information in connection with credit transactions</u>, except to the extent that those laws are inconsistent with the provisions of this subchapter and then only to the extent of the inconsistency. Upon its own motion or upon the request of any creditor, State or other interested party which is submitted in accordance with procedures prescribed in regulations of the Board, the Board shall determine whether any such inconsistency exists. If the Board determines that a <u>State-required disclosure is inconsistent, creditors located in that State may not make disclosures using the inconsistent term or form</u>, and shall incur no liability under the law

5

of that State for failure to use such term or form, notwithstanding that such determination is subsequently amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

15 U.S.C. § 1610(a)(1) (emphasis added). This provision applies only to laws "relating to the disclosure of information in connection with credit transactions," and preempts those laws only to the extent that the "terms and forms" mandated by the state are "inconsistent" with those required by TILA. The preemption provision thus applies only to inconsistencies in the substance of state disclosure requirements. The UCL does not, on its face, relate to the disclosure of information in connection with credit transactions, let alone impose disclosure requirements that are different than TILA's in any way. Thus, TILA does not preempt the UCL.

However, the Home Owners' Loan Act of 1933 (HOLA) and regulations promulgated by the Office of Thrift Supervision (OTS) can preempt certain claims under the UCL. Under HOLA, OTS has authority to regulate federal savings associations. 12 U.S.C. § 1263(a). Based on this authority, OTS promulgated 12 C.F.R. § 560.2, which provides:

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities . . . .

Id. § 560.2(a). Paragraph (b) of Section 560.2 lists types of state laws that are preempted under HOLA and OTS regulations. Paragraph (c) is a savings clause, which states that state laws

6

that "only incidentally affect the lending operations of Federal savings associations" are not preempted. Because of Section 560.2, the presumption against preemption does not operate within the field of lending by federal savings associations. Silvas v. E*Trade Mortgage Corp., 514 F.3d 1001, 1004 (9th Cir. 2008).

OTS provides the following guidance on how to determine whether Section 560.2 preempts a state law:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

OTS, Lending and Investment, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sep. 30, 1996).

In Silvas, the Ninth Circuit addressed the preemption of the UCL by HOLA and OTS regulations. There, the plaintiffs alleged that a federal thrift institution, subject to HOLA and OTS regulations, violated the UCL by misrepresenting rescission rights under TILA and by failing to refund deposits as required by TILA. 514 F.3d at 1003, 1006 n.2. The court concluded that Section 560.2 preempted the UCL, as plead by the plaintiffs, because their claims effectively plead the UCL as a state law imposing requirements concerning loan-related fees and disclosure and advertising. Id. at 1005. Federal law preempted the UCL "as applied" by the plaintiffs; the court made clear that the UCL is not preempted in its entirety. See id. at 1008.

To the extent that Plaintiffs' UCL claims here rest on allegations of non-disclosure and the terms of Ms. Newbeck's loan, they are preempted by federal law. As noted above, Plaintiffs allege that Defendants violated the UCL by failing to disclose the nature of the interest rate on the loan and the potential for negative amortization. These claims invoke the UCL as a state law that regulates:

> The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan; . . .
>
> Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants . . . .
>
> Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages; . . . .

12 C.F.R. § 560.2(b)(4), (b)(9) and (b)(10). Thus, under Silvas, HOLA and OTS regulations preempt Plaintiffs' claims against Defendants under the UCL for the alleged violations of TILA and "unfair and fraudulent" business practices related to non-disclosure and the terms of the loan.[4]

It is not clear, however, that federal law preempts Plaintiffs' UCL claims based on California Financial Code Section 22302. Section 22302 provides that loans "found to be

---

[4] Plaintiffs do not dispute that Plaza Home is and Washington Mutual was regulated by OTS. Indeed, Plaintiffs state in their papers that Washington Mutual was subject to OTS authority. See Pls.' Reply to Washington Mutual's Mot. to Dismiss at 3.

8

unconscionable . . . shall be deemed" unlawful. Under California law, "unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." Armendariz v. Found. Health Psychcare Svcs., Inc., 24 Cal. 4th 83, 114 (2000) (citation and internal quotation marks omitted). For a court to refuse to enforce a contract as unconscionable, a plaintiff must prove both procedural and substantive elements. Id. These elements are judged on a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id.

As noted above, Section 560.2 provides that federal law does not preempt state contract and commercial laws that "only incidentally affect the lending operations of Federal savings associations." Plaintiffs plead that they "were given no choice but to accept and sign" the loan documents and that the "loan process offered by defendants did not permit for any meaningful negotiation of terms or even allow sufficient time to conduct an adequate review of the loan documents at the time of presentation and execution." Compl. ¶¶ 122 and 124. Thus, if Plaintiffs' UCL claims based on Section 22302 rest on Defendants' alleged refusal to allow them to review the loan documents, federal law may not preempt them. However, because their complaint is not clear as to whether these claims concern their alleged inability to review the loan documents or the substantive terms of the loan, the Court dismisses Plaintiffs' UCL claim based on Section 22302 with leave

9

to amend. Plaintiffs' claims may not be preempted if they rest on allegations primarily implicating state contract law. See 12 C.F.R. § 560.2(c).

In addition, Plaintiffs must plead Washington Mutual's role in the loan origination process. Although they allege that Washington Mutual engaged in unconscionable conduct at the time the loan was originated, Plaintiffs note throughout their papers that Washington Mutual became involved with the mortgage only after Plaza Home allegedly sold the loan in January, 2007.

Accordingly, the Court dismisses with prejudice Plaintiffs' UCL claims to the extent that they implicate non-disclosure or the terms of Ms. Newbeck's loan; the UCL, as plead in these claims, is preempted by federal law. The Court dismisses Plaintiffs' UCL claims based on California Financial Code Section 22303 with leave to amend to plead facts to demonstrate that these claims are not preempted and to show Washington Mutual's role in the loan origination process.

III. Fraudulent Omission Claims

Plaintiffs allege that Defendants' failure to disclose information constituted fraud under California law. These allegations appear to assert a claim for fraudulent deceit. To state such a claim, a plaintiff must plead "'(a) misrepresentation; (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" In re Napster, Inc. Copyright Litig., 479 F.3d 1078, 1096 (9th Cir. 2007) (quoting Small v. Fritz Cos., Inc., 30 Cal. 4th 167, 173 (2003)); see generally Cal. Civ. Code §§ 1709-10. In relevant part, deceit is defined as the "suppression of a

10

fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." Cal. Civ. Code § 1710.

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. Proc. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Statements of the time, place and nature of the alleged fraudulent activities are sufficient, id. at 735, provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false." In re GlenFed, Inc., Secs. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Scienter may be averred generally, simply by saying that it existed. Id. at 1547; see Fed. R. Civ. Proc. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally."). Allegations of fraud based on information and belief usually do not satisfy the particularity requirements of Rule 9(b); however, as to matters peculiarly within the opposing party's knowledge, allegations based on information and belief may satisfy Rule 9(b) if they also state the facts upon which the belief is founded. Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987).

Plaintiffs' allegations do not satisfy the heightened pleading requirement for fraud required by Rule 9(b). In particular, they do not identify the time, place and manner of the alleged omissions. The complaint also fails to name any of Defendants'

11

employees who allegedly perpetrated the fraud. And, as noted above, Plaintiffs have not alleged Washington Mutual's role in the origination of the loan.

Plaintiffs cannot base their fraud claim solely on language in the loan documents and conclusory allegations that these statements were deceptive. On their face, these statements disclose the loan's terms. For instance, the documents state the potential for negative amortization. Compl. ¶ 136; Selden Decl., Ex. D at 1. If Plaintiffs intend to complain that Defendants affirmatively misrepresented the nature of these terms or engaged in other unlawful misconduct, Plaintiffs must plead facts accordingly.

The Court therefore dismisses Plaintiffs' fraud claim with leave to amend to plead the circumstances of the alleged fraud with particularity. In addition, Plaintiffs must plead facts to show Washington Mutual's role in the alleged fraud.

IV. Claim for "Equitable Set Aside Foreclosure Sale"

Plaintiffs ask the Court to set aside Washington Mutual's foreclosure sale of their property. They assert that Washington Mutual did not have possession of the original mortgage note or the deed of trust under which it was secured and, as a result, it was not entitled to foreclose.

A plaintiff seeking to set aside a foreclosure sale must first allege tender of the amount of the secured indebtedness. Abdallah v. United Savings Bank, 43 Cal. App. 4th 1101, 1109 (1996) (citing FPCI RE-HAB 01 v. E & G Investments, Ltd., 207 Cal. App. 3d 1018, 1021-22 (1989)); Smith v. Wachovia, 2009 WL 1948829, at *3 (N.D. Cal.). Without pleading tender or the ability to offer tender, a plaintiff cannot state a cause of action to set aside a foreclosure

12

sale. <u>Karlsen v. Am. Savings & Loan Ass'n</u>, 15 Cal. App. 3d 112, 117 (1971) (citing <u>Copsey v. Sacramento Bank</u>, 133 Cal. 659, 662 (1901)); <u>Smith</u>, 2009 WL 1948829, at *3 (citing <u>Karlsen</u>). Plaintiffs allege neither tender nor their ability to offer tender. Thus, they do not state a claim to set aside the foreclosure sale.

Even if they alleged tender, the basis on which they appear to seek relief does not support their claim. In California, there is no requirement that a trustee produce the original promissory note prior to a non-judicial foreclosure sale. <u>See, e.g.</u>, <u>Pantoja v. Countrywide Home Loans, Inc.</u>, 640 F. Supp. 2d 1177, 1186 (N.D. Cal. 2009); <u>Smith</u>, 2009 WL 1948829, at *3; <u>Neal v. Juarez</u>, 2007 WL 2140640, *8 (S.D. Cal.) (citing <u>R.G. Hamilton Corp. v. Corum</u>, 218 Cal. 92, 94, 97 (1933); <u>Cal. Trust Co. v. Smead Inv. Co.</u>, 6 Cal. App. 2d 432, 435 (1935)). California Civil Code Sections 2924 through 2924k "provide a comprehensive framework for the regulation of a non-judicial foreclosure sale pursuant to a power of sale contained in a deed of trust." <u>Knapp v. Doherty</u>, 123 Cal. App. 4th 76, 86 (2004) (quoting <u>Moeller v. Lien</u>, 25 Cal. App. 4th 822, 830 (1994)). <u>Knapp</u> explains the non-judicial foreclosure process as follows:

> Upon default by the trustor [under a deed of trust containing a power of sale], the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale. The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee. After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale. After the 3-month period has elapsed, a notice of sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale.

<u>Knapp</u>, 123 Cal. App. 4th at 86 (citation omitted). "A properly conducted nonjudicial foreclosure sale constitutes a final

**United States District Court**
For the Northern District of California

adjudication of the rights of the borrower and lender." Id. at 87.

Plaintiffs have not pointed to controlling authority to show that this statutory scheme requires production of the original promissory note or deed of trust.[5] Thus, even if they alleged tender, to the extent that they allege irregularities in the foreclosure sale based on Washington Mutual's failure to produce the original promissory note or deed of trust, they do not state a claim.

Accordingly, the Court dismisses Plaintiffs' claim for "Equitable Set Aside Foreclosure Sale" with leave to amend to allege tender or the ability to offer tender and to plead facts that warrant setting aside the foreclosure sale.

V. Claim for Declaratory Relief

The Declaratory Judgment Act (DJA) permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy." 28 U.S.C. § 2201; see Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 893 (9th Cir. 1986). The "actual controversy" requirement of the Declaratory Judgment Act is the same as the "case or controversy" requirement of Article III of the United States Constitution. Am. States Ins. Co. v. Kearns, 15 F.3d 142, 143 (9th Cir. 1993).

Plaintiffs' declaratory judgment claim fails because they have not alleged facts showing that there is an actual case or

---

[5] Plaintiffs cite various out-of-state cases, which apply non-California law to judicial foreclosure actions. See In re Foreclosure Actions, 2007 WL 4034554 (N.D. Ohio); In re Foreclosure Cases, 2007 WL 3232430 (N.D. Ohio); Landmark Nat'l Bank v. Kessler, 289 Kan. 528 (2009); U.S. Bank Nat'l Ass'n v. Ibanez, 2009 WL 3297551 (Mass. Land Ct.). Because these cases do not apply California's non-judicial foreclosure sale statutes, they do not support Plaintiffs' position.

14

controversy. As noted above, the foreclosure sale has already been completed, which operates as a final adjudication of the rights among the parties. Unless Plaintiffs plead facts that show actionable irregularities in the foreclosure sale or any other reason to believe that the ownership of the property is in genuine dispute, declaratory relief is not necessary. Accordingly, the Court dismisses Plaintiffs' declaratory judgment claim with leave to amend to plead a cognizable case or controversy.

VI. Mr. Ford's Standing in the Action

Plaza Home argues that Mr. Ford was not a party to the mortgage and moves to dismiss his claims on the basis that he lacks standing.

Plaintiffs' complaint is not clear as to whether Mr. Ford was a party to the loan. Although the deed of trust names Mr. Ford as a borrower and other loan documents bear his signature, Plaintiffs' complaint pleads that Ms. Newbeck executed the loan. Compare Selden Decl., Ex. B at 6 and Selden Decl., Ex. E (loan documents bearing Mr. Ford's signature) with Compl. ¶ 32 (stating that Ms. Newbeck executed the loan).

Because Mr. Ford's role in the loan transaction is not clear and, as discussed above, Plaintiffs have not adequately alleged their claims for relief, the Court finds it premature to decide whether Mr. Ford has standing to assert claims in this action. If Plaintiffs choose to file an amended complaint, they shall plead facts to clarify Mr. Ford's role. In a subsequent motion to dismiss, Plaza Home may renew its motion to dismiss Mr. Ford's claims.

Also, it appears that Mr. Ford is not an attorney and, as a

result, he cannot represent Ms. Newbeck in this action.  Thus, Ms. Newbeck must sign any amended complaint and any subsequent papers.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motions to Dismiss (Docket Nos. 13 and 20).  The Court's holding is summarized as follows:

1. Plaintiffs' TILA claims are dismissed with leave to amend to plead facts showing that they are entitled to seek damages or rescission under TILA, despite the expiration of the limitations period.

2. Plaintiffs' UCL claims, to the extent that they implicate non-disclosure or the loan's terms, are dismissed with prejudice because federal law preempts such claims.  Plaintiffs' UCL claims based on California Financial Code Section 22303 are dismissed with leave to amend to plead facts that show these claims are not preempted and to state Washington Mutual's role in the loan origination process.

3. Plaintiffs' fraudulent omissions claims are dismissed with leave to amend to plead the fraud with particularity and to allege Washington Mutual's role in the original loan transaction.

4. Plaintiffs' claim for "Equitable Set Aside Foreclosure Sale" against Washington Mutual is dismissed with leave to amend to allege tender or ability to offer tender and to allege actionable irregularities in the foreclosure sale.

5. Plaintiffs' declaratory relief claim is dismissed with leave to amend to plead a cognizable case or controversy.

Plaintiffs have fourteen days from the date of this order to file an amended complaint addressing the above-mentioned deficiencies. Plaintiffs shall serve their complaint on all Defendants within seven days of filing. If Plaintiffs do so, Defendants may file motions to dismiss three weeks thereafter, with Plaintiffs' oppositions due two weeks following and Defendants' replies due one week after that. Defendants' motions, if filed, shall be taken under submission on the papers. **Plaintiffs' failure to comply with this order will result in the dismissal of their claims with prejudice.**

IT IS SO ORDERED.

Dated: January 19, 2010

CLAUDIA WILKEN
United States District Judge